**David MOOR, Plaintiff-Appellant,**

v.

**Frank I. MADIGAN et al., Defendants-Appellees.**

**William Donovan RUNDLE, Jr., a minor, by William D. Rundle, his guardian ad litem, et al., Plaintiffs-Appellants,**

v.

**Frank I. MADIGAN et al., Defendants-Appellees.**

Nos. 71–3019, 71–3020.

United States Court of Appeals, Ninth Circuit.

April 12, 1972.

Rehearings Denied May 30, 1972.

Ronald M. Greenberg (argued), of Richards, Watson & Dreyfuss, Los Angeles, Cal., for plaintiffs-appellants.

Peter W. Davis (argued), Richard J. Heafey, of Crosby, Heafey, Roach & May, Oakland, Cal., for defendants-appellees.

Before HAMLIN, MERRILL and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge:

These are appeals from an order of the United States District Court for the Northern District of California dismissing appellants' claims against the County of Alameda (hereinafter County).

The claims arose out of the May, 1969, "People's Park" disturbance or riot, in which appellants were allegedly

injured by an Alameda County deputy sheriff who was performing duties at that time and place on behalf of the County.

On February 12, 1970, appellants brought actions against several deputies, the sheriff, and the County. The complaints against the County alleged federal causes of action under the Civil Rights Act, 42 U.S.C. sections 1981–1988, and pendent state claims under sections 810 et seq. of the California Government Code (hereinafter Tort Claims Act). Both federal and state causes of action were premised on the theory that the county could be held vicariously liable for the acts of the deputies.

Both appellants alleged jurisdiction in the district court pursuant to 28 U.S.C. section 1343. Appellant Moor also alleged diversity jurisdiction under 28 U.S.C. section 1332.

The County subsequently filed motions to dismiss the claims against it in each case, contending that, as to the Civil Rights Act claims, the County was not a "person" who could be sued under the Act. The County also argued that, as the federal claims were not viable, the pendent state claims must also be dismissed. In addition, in the *Moor* case, the County separately moved to dismiss for lack of diversity, contending in part that the County was not a "citizen" for federal diversity jurisdiction purposes.

The trial court ultimately granted all of these motions and ordered that all claims against the County be dismissed. These appeals are taken from that order.

Three broad issues are thus presented by appellants. First, they argue that their Civil Rights Act claims against the County are viable, notwithstanding the fact that the County is not a "person" within section 1983 of the Act. Second, they contend that even if they did not present a cognizable federal cause of action against the County, the district court should have retained jurisdiction of the pendent state claims against the County. Finally, appellant Moor argues that the County is a "citizen" for federal diversity jurisdiction purposes.

## I. *The Civil Rights Act claims.*

In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court, faced with a Civil Rights Act action against the City of Chicago stemming from the acts of certain of its police officers, held that municipalities are not "persons" within the meaning of 42 U.S.C. section 1983,[1] and were thus excluded from its coverage.

Appellants state that they are not taking issue with that holding.

Instead, they contend that the *Monroe* holding should be limited to mean only that congressional enactment of section 1983 did not purport to impose vicarious liability on municipalities through federal law when no such liability existed under state law. From this position, they reason that when state law provides for the imposition of such liability, a federal court may properly entertain claims brought thereunder.

Appellants further contend that enforcement of these state-created rights in federal court can be effected pursuant to the mandate of 42 U.S.C. section 1988,[2] which permits the adoption of

---

1. 42 U.S.C. section 1983, in pertinent part, reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. 42 U.S.C. section 1988, in pertinent part, provides:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter . . . shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable

state law in order to make the Civil Rights Act fully effective.

Thus they claim that, as California permits the imposition of vicarious liability against a municipality,[3] and as they are seeking enforcement of this liability under section 1988, not section 1983, the holding in Monroe v. Pape is inapposite.

We do not agree.

In Brown v. Town of Caliente, 392 F. 2d 546 (9th Cir. 1968), this court considered the argument that abolition of sovereign immunity in Nevada would allow the court to entertain a section 1983 action against a Nevada municipality. In rejecting that argument, the court noted:

> The Supreme Court having considered the Civil Rights Act, and having held municipalities were not liable under it, we cannot see how any action by the state of Nevada, either by its courts or by the Legislature, . . . by abolishing sovereign immunity in Nevada, can bring about a different reading or different result to Monroe v. Pape. . . . 392 F.2d at 548.

However, appellants urge that Brown, like Monroe, is not applicable to their appeals, because the Brown court had not considered the relevancy of section 1988.

In support of this view, appellants rely heavily on Carter v. Carlson, 144 U.S.App.D.C. 288, 447 F.2d 358 (1971). Carter, in pertinent part, involved a section 1983 suit against the District of Columbia, resulting from the acts of certain of its police officers. In discussing Monroe v. Pape as a potential bar to the suit, the Carter court concluded that Monroe presented only a limited bar, and was not applicable to the extent that local law now permitted such suits.

The Carter court similarly relied on the language of section 1988 to support this conclusion, and also similarly implied that the Brown court might have reached a different result, had section 1988 been considered.[4a]

Appellants' reliance on Carter is, however, misplaced. The Carter court specifically rested its conclusion on a second independent ground, that Congress had plenary power to impose liability on the District of Columbia; thus the factors that caused the Monroe court to hold the Civil Rights Act inapplicable to ordinary municipalities had no application to suits against the District. Insofar as the Carter case would impose liability under section 1988 on municipalities other than the District of Columbia, it is inconsistent with our decision in Brown v. Town of Caliente and we do not follow it.[4b]

Appellants have also contended that this court has previously endorsed the view that state law may be applied under section 1988 in Hesselgesser v. Reilly, 440 F.2d 901 (9th Cir. 1971).

While it is true that in Hesselgesser this court did apply state law to hold a sheriff vicariously liable for the civil rights violations of his deputies, that holding has no impact on our finding that Monroe v. Pape and Brown v. Town of Caliente control this appeal. Hesselgesser held only that state law could be

remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State . . . ., so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, . . . ."

3. There appears to be some question as to whether or not California law would impose vicarious municipal liability on the facts of this case. However, as we con-

clude that these claims are not maintainable in federal court, we do not reach the issue.

4a. 447 F.2d at 369 n. 36.

4b. At least one other federal court has examined the Carter opinion and also concluded that its reliance on the peculiar status of the District of Columbia considerably weakens the persuasive effect of the opinion, and rejected its application to a case involving an ordinary municipality. See Ries v. Lynskey, 452 F.2d 172, 175 (7th Cir. 1971).

applied pursuant to section 1988 "under appropriate circumstances." 440 F.2d at 903. Clearly, the sheriff held liable in *Hesselgesser* was a "person" within the meaning of the Civil Rights Act, as defined by *Monroe*. Thus, imposition of liability upon the sheriff was appropriate and in no way conflicts with the *Monroe* holding.

These appeals, however, present a totally different situation. Were appellants allowed to enforce the state-created municipal liability in the district court under section 1988, they would achieve a result which could not be reached through section 1983, under *Monroe* and *Brown*. This alone precludes application of section 1988, for the section, by its own terms, cannot be applied when the result would be *inconsistent with the laws of the United States*. *See* Wilcher v. Gain, 311 F.Supp. 754 at 755 (N.D. Cal.1970).

Finally, we note that section 1988 has not been construed as having created a separate basis for prosecuting claims under the Civil Rights Act, but rather as pertaining to the "forms of process and the scope of remedy." Pierre v. Jordan, 333 F.2d 951, 958 (9th Cir. 1964) cert. denied 379 U.S. 974, 85 S.Ct. 664, 13 L.Ed.2d 565 (1965), rehearing denied, 380 U.S. 927, 85 S.Ct. 884, 13 L. Ed.2d 814 (1965). *Cf.* Johnson v. New York State Ed. Dept., 319 F.Supp. 271, 276 (E.D.N.Y.1970). Thus, it provides for the adoption of state law to cure remedial deficiencies in the federal act, but does not create any right of action in and of itself.[5]

We therefore hold that the district court properly dismissed the Civil Rights Act complaints against Alameda County.

## II. *Pendent jurisdiction over state claims*

■ Appellants here contend that, even assuming they have not presented a cognizable federal claim under the Civil Rights Act, the trial court should have nevertheless retained jurisdiction to decide their pendent state claims.

We do not agree.

In dismissing the pendent state claims, the trial court relied primarily on our decision in Hymer v. Chai, 407 F.2d 136 (9th Cir. 1969), in which this court held that pendent jurisdiction is available only to join claims, not parties. As the court below held that there was no viable federal claim against the County, it therefore concluded that the non-federal pendent claims could not be used to join the County in the action.

Appellants concede that *Hymer* was binding upon the district court. However, they argue that *Hymer* is questionable as a valid proposition of law, and contend that it is inconsistent with the general liberalization of the doctrine of pendent jurisdiction announced in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In support of this view, appellants have cited cases in which courts have permitted assertion of federal jurisdiction over additional parties who were not involved in the federal claim and whose sole connection with the case stemmed from the pendent state law claim.[6]

However, there are numerous decisions which have reached the opposite conclusion.[7] Moreover, at least one au-

---

5. This is consistent with the construction of section 1988 which was made in Sullivan v. Little Hunting Park, 396 U.S. 229, 240, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), wherein the Supreme Court sanctioned application of state law under section 1988 to make a damage determination. *See also* the dissent of Justice Harlan, *Id.* at 256–257, 90 S.Ct. 400.

6. *See* Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809 (8th Cir. 1969) ; Connecti-cut Gen. Life Ins. Co. v. Craton, 405 F.2d 41 (5th Cir. 1968) ; Jacobson v. Atlantic City Hosp., 392 F.2d 149 (3rd Cir. 1968) ; Wilson v. American Chain and Cable Co., 364 F.2d 558 (3rd Cir. 1966) ; Stone v. Stone, 405 F.2d 94 (4th Cir. 1968). *See also*, Astor-Honor, Inc. v. Grosset & Dunlap, Inc., 441 F.2d 627 (2d Cir. 1971).

7. Williams v. United States, 405 F.2d 951 (9th Cir. 1969) ; Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964) ; cert.

thority has expressed the view that pendent jurisdiction should not be available to bring in a different party on a solely state claim merely because that claim is related to a federal claim against an existing party.[8] Another has stated that it is by no means certain that pendent jurisdiction permits joinder of a party against whom no federal claims exist.[9] Furthermore, Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809 (8th Cir. 1969), a case critical of our decision in *Hymer* and strongly relied upon by appellant, has itself been criticized as having "strained for jurisdiction." [10]

Aside from this obvious lack of judicial unanimity on the view propounded by appellant, it appears that only two decisions have decided the precise question involved herein, namely, whether a Civil Rights Act action against municipal employees will permit a federal court to join the municipality itself as a party solely on the basis of pendent state claims. Both have rejected the argument.

In Patrum v. City of Greensburg, 419 F.2d 1300 (6th Cir. 1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1125, 25 L.Ed.2d 398 (1970), the court upheld the trial court's refusal to exercise pendent jurisdiction over state claims against the City of Greensburg in a section 1983 action against one of its policemen. Similarly, in Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965), the court held that state

claims against a city could not be pendent to a section 1983 claim against one of its police officers.

We are thus confronted with a question on which there is an apparent conflict, but on which this court has previously taken a stand in *Hymer*. Having found ample support for the position taken by this court in *Hymer* and having been shown no compelling reason to reverse that stand,[11] we conclude that the court below properly relied on *Hymer* in refusing to exercise jurisdiction over the pendent state claims.

Furthermore, it appears that the district court's decision not to entertain the pendent state claims was correct, aside from the impact of *Hymer*.

*Gibbs* makes it clear that exercise of this pendent jurisdiction is discretionary in any case, and involves "considerations of judicial economy, convenience and fairness to litigants. . . ." 383 U.S. at 726, 86 S.Ct. at 1139. It is clear from the order of the district court [12] that it felt the instant case would be based on the California Tort Claims Act, involve special defenses available to the County, and call for the resolution of difficult questions of California law, upon which there was a dearth of authority.

■ Thus, the district court also felt that as a purely discretionary matter the federal court was an inappropriate forum to hear these state claims.[13] We agree.

---

denied, 379 U.S. 964, 85 S.Ct. 655, 13 L. Ed.2d 558 (1965); Barrows v. Faulkner, 327 F.Supp. 1190 (N.D. Okl. 1971); Hall v. Pacific Maritime Ass'n, 281 F.Supp. 54 (N.D.Cal. 1968).

8. Wright, Federal Courts, 65 (2d ed. 1970).

9. 3A Moore's Federal Practice (2d Ed. Supp.) ¶ 18.07 (1.-4).

10. *Id.* ¶ 18.07 (1.-2) n. 28.

11. Appellants have raised the contention that *Hesselgesser*, *supra*, by utilizing state law under section 1988 to impose vicarious liability on the county sheriff, and thereby bring him into the action solely on the basis of state claims, has impli-

edly overruled *Hymer*. An examination of the *Hesselgesser* opinion fails to disclose any such intent, nor, indeed, any mention of *Hymer* at all. We reject the argument.

12. In footnote 5 of the opinion, the district court stated, in part:
"Moreover, on the issue of the court's *discretion* to adjudicate the pendent claim, there would still be substantial doubts as to whether the state claim should be heard."

13. Appellants contend that the County, by appearing to generally contest the action, had waived any right to later contest the jurisdictional issue. The short answer to

For the foregoing reasons, we hold that the trial court properly dismissed appellants' pendent state claims against the County of Alameda.

### III. *The County as a "citizen" for diversity purposes.*

 In the *Moor* case a separate basis for jurisdiction, diversity of citizenship, was also alleged. The trial judge dismissed claims presented under this jurisdictional basis, noting our prior holding in Miller v. County of Los Angeles, 341 F.2d 964 (9th Cir. 1964), in which this court held that a California county is not a citizen for federal diversity purposes.

Appellant Moor contends that we should consider this position in light of authority holding that a county is a "citizen" for diversity purposes.[14]

Our position had its inception in Lowe v. Manhattan Beach City School Dist., 222 F.2d 258 (9th Cir. 1955) in which this court held that a school district was not a citizen for diversity purposes. The reasoning of that opinion was subsequently applied to a suit against a California county, in *Miller*. That holding is still the law in the Ninth Circuit. *Cf.* Fifty Associates v. Prudential Insurance Co., 446 F.2d 1187, 1191 (9th Cir. 1970).

The opinion in *Fifty Associates* makes it clear that we are by no means alone in holding that a state agency may not be a party to a diversity action. *See* 446 F. 2d at 1191 and cases cited therein.

We therefore hold that the district court properly rejected appellant Moor's allegation of diversity of citizenship and correctly dismissed claims brought thereunder. As we have previously concluded that appellants' allegations of jurisdiction under the Civil Rights Act and the doctrine of pendent jurisdiction were also properly rejected by the district court, we therefore hold the decision of the court dismissing all claims against the County of Alameda was correct, and must be affirmed.

Affirmed.

---

this is contained in *Gibbs*, in which the Supreme Court stated that pendent state claims might appropriately be dismissed at any time. 383 U.S. at 726–727, 86 S. Ct. 1130.

14. Brown v. Marshall Cty., 394 F.2d 498 (6th Cir. 1968); Pettibone v. Cty., 120 F.2d 850 (8th Cir. 1941); Harris Cty. v. Ideal Cement Co., 290 F.Supp. 956 (S.D. Tex. 1968).