**Monica ALDINGER, a single woman, Plaintiff-Appellant,**

**v.**

**Merton L. HOWARD, Individually and in his capacity as Treasurer of Spokane County, and Jane Doe Howard, his wife, Defendants-Appellees.**

**No. 73–3129.**

United States Court of Appeals, Ninth Circuit.

April 7, 1975.

---

Norman R. Rosenberg (argued) Spokane, Wash., for plaintiff-appellant.

Garald A. Gesinger, Deputy Pros. Atty., for defendants-appellees.

## OPINION

Before CARTER, WRIGHT and WALLACE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is an appeal from an order dismissing appellant's action against Spokane County, Washington. The order of dismissal was certified by the district court, pursuant to Fed.R.Civ.P. 54(b), as appropriate for immediate appellate review. We have jurisdiction under 28 U.S.C. § 1292(b).

Appellant Monica Aldinger sued Spokane County, its county commissioners, and its elected county treasurer, Howard, and his wife. She sought injunctive and declaratory relief and damages for what she claimed was her wrongful dismissal from employment in the county treasurer's office.

This dismissal, she asserted, was based solely on the allegation that she had been "living with [her] boy friend," and as such was subject to redress under the Civil Rights Act of 1871 [42 U.S.C. §§ 1983 and 1988] as a violation, under color of state law, of her constitutional rights under the First, Fifth, Ninth, and Fourteenth Amendments. Appellant also asserted that these same facts gave rise to a cause of action against the county under Wash.Rev.Code § 4.08.120 (1973) (providing for vicarious liability of counties in certain situations), and asked the district court to exercise pendent jurisdiction over these state law claims.

In granting the county's motion that it be dismissed as a party, the district court ruled that neither 42 U.S.C. § 1983 nor § 1988 provides for a federal cause of action against a county under 28 U.S.C. § 1343, and that the pendent state law claim against the county must therefore also be dismissed "inasmuch as this court now has no independent basis of jurisdiction over this defendant." We affirm.

### A. FEDERAL QUESTION JURISDICTION.

Appellant contends that her second amended complaint stated a cause of action under the Civil Rights Act of 1871 [42 U.S.C. §§ 1983 and 1988 (1970)]

which fell within the district court's 28 U.S.C. § 1343 jurisdiction.[1] This argument is foreclosed by the Supreme Court's holding in Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), aff'g in part and rev'g in part Moor v. Madigan, 458 F.2d 1217 (9th Cir. 1972).

In *Moor*, the Supreme Court addressed the same question as that presented here: whether these Civil Rights Act provisions apply to political subdivisions of a state. Relying heavily on its earlier decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court concluded that:

" . . . § 1983 is unavailable to these petitioners insofar as they seek to sue the County. And § 1988, in light of the express limitation contained within it, cannot be used to accomplish what Congress clearly refused to do in enacting § 1983."

411 U.S. at 710, 93 S.Ct. at 1796.

Both Moor v. County of Alameda and Monroe v. Pape were civil rights actions wherein the relief sought was money damages. In the case before us, the appellant sought declaratory and injunctive relief as well as damages.

However, any possibility that a political subdivision might be a suable "person" under §§ 1983 and 1988 for purposes of declaratory and injunctive relief was eliminated by the Court's subsequent decision in City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). In that case, the Court reviewed a three-judge court's determination that § 1983 provided for 28 U.S.C. § 1343 jurisdiction over an action by owners of a retail liquor establishment against the city of Kenosha, Wis-

consin. Their action challenged that city's failure to conduct formal adversary hearings before refusing to renew plaintiffs' liquor license. Reversing, the Court stated:

"We find nothing in the legislative history discussed in *Monroe*, or in the language actually used by Congress, to suggest that the generic word 'person' in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them. Since, as the Court held in *Monroe*, 'Congress did not undertake to bring municipal corporations within the ambit of' § 1983, *id.*, [365 U.S.] at 187 [81 S.Ct. 473, at 484], they are outside of its ambit for purposes of equitable relief as well as for damages. The District Court was therefore wrong in concluding that it had jurisdiction of appellees' complaints under § 1343."

*Id.* at 513, 93 S.Ct. at 2226.

■ Finally, we consider City of Kenosha v. Bruno controlling even though plaintiffs in that case sought to enjoin the actions of a city rather than a county. Moor v. County of Alameda clearly indicates that this difference is inconsequential as to § 1983 liability by using the terms "municipality" and "political subdivision" interchangeably. *See, e. g.*, 411 U.S. at 708, 93 S.Ct. 1785. Consequently, the district court correctly determined that appellant failed to state a federal cause of action for either damages or for injunctive and declaratory relief.

## B. *JURISDICTION OVER THE PENDENT STATE LAW CLAIMS.*

■ Appellant admits that, if the district court lacked jurisdiction over her

1. Appellant's complaint also alleged that jurisdiction lay under 28 U.S.C. § 1331(a), and that the amount in controversy exceeded $10,000. A divided Second Circuit panel has recently found that such a jurisdictional allegation can sustain a direct action under the Fourteenth Amendment against a municipality not subject to the district court's § 1343 jurisdiction. Brault v. Town of Milton (2d Cir., Feb. 24, 1975).

In *Brault*, however, the plaintiffs had relied on § 1331 as the sole asserted basis for federal question jurisdiction, and had consistently as-

serted a cause of action under the Fourteenth Amendment. Appellants in this action have consistently chosen to rely on their §§ 1983 and 1988 claims under § 1343, along with their pendent state claims, as the basis on which relief for Spokane County's alleged deprivations of their constitutional rights could be granted. Consequently, the district judge did not reach the question of whether the complaint would have been otherwise adequate to establish a § 1331 cause of action against a political subdivision of a state, nor need we reach that question here.

federal causes of action against the county, it was required to dismiss her pendent state law claims against this defendant, together with the federal claims, by this court's decisions in *Hymer v. Chai,* 407 F.2d 136 (9th Cir. 1969) and *Moor v. Madigan, supra.* She suggests, however, that we should now abandon the *Hymer* rationale because: (1) the Supreme Court's opinion in *Moor v. County of Alameda* left the continued validity of *Hymer* in considerable doubt; and (2) the great majority of other courts which have considered this question have determined that pendent jurisdiction should be available to join parties as well as claims. We disagree.

In *Moor v. County of Alameda,* the Court was presented with the very question which is before us: Can a district court hear a party's state law claims against a named defendant over whom there is no independent federal basis for jurisdiction, where the nonfederal claims arise out of the same facts and circumstances as viable federal claims against other parties?

The *Moor* Court, however, purported to avoid reaching this question. Instead, it chose to affirm the alternative holding of the lower courts that "as a purely discretionary matter the federal court was an inappropriate forum to hear these state claims," (458 F.2d at 1221), *even if* there was federal court power to adjudicate them. 411 U.S. at 715–17, 93 S.Ct. 1785.

In the case before us, the district judge made no alternative ruling on the suitability of this case for the discretionary exercise of pendent jurisdiction. Rather, he based his dismissal of the state law claims against Spokane County exclusively on the ground that, under this court's decisions in *Hymer v. Chai* and *Moor v. Madigan,* he had no power to hear claims against "pendent parties."

Appellant contends that *Moor v. County of Alameda* contains language which compels a re-examination of this court's opinions in *Hymer* and *Moor.*

In *Hymer v. Chai,* we first considered whether the Supreme Court's expansion of the doctrine of pendent jurisdiction in

*United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), allowed joinder of additional parties as well as joinder of state law claims arising out of "a common nucleus of operative fact" with viable federal claims. We said that "[j]oinder of claims, not joinder of parties, is the object of the doctrine," 407 F.2d at 137, and held such an expansion unwarranted.

In *Moor v. Madigan,* we said:

"We are thus confronted with a question on which there is an apparent conflict, but on which this court has previously taken a stand in *Hymer.* Having found ample support for the position taken by this court in *Hymer* and having been shown no compelling reason to reverse that stand, we conclude that the court below properly relied on *Hymer* in refusing to exercise jurisdiction over the pendent state claims."

458 F.2d at 1221 (footnote omitted).

In *Moor v. County of Alameda,* the Supreme Court noted that "*Hymer* stands virtually alone against [the] post-*Gibbs* trend in the courts of appeals" to permit district courts to hear pendent claims involving additional parties, where the entire action arises out of a single constitutional "case" as defined in *Gibbs.* 411 U.S. at 713–14, 93 S.Ct. 1785, 1798. The *Moor* Court went on to note the substantial analogies between the joinder of parties under pendent jurisdiction and under expanded concepts of ancillary jurisdiction reflected in Fed.R. Civ.P. 13(a), 13(h), and 14(a).

However, the Supreme Court's opinion also recognized that there are strong arguments in favor of restricting at least certain types of state law actions to available state forums rather than hearing them in federal courts. The Court concluded that the question of federal judicial power to hear such state law claims against "pendent parties" is "a subtle and complex question with far-reaching implications," presenting difficult issues not appropriate for resolution in the case there before it. 411 U.S. at 715, 93 S.Ct. 1785 at 1799.

It seems clear to us that we are not bound by any of the above-noted dicta in

Moor v. County of Alameda to reconsider our decisions in Hymer v. Chai and Moor v. Madigan. We are therefore free to dispose of this issue on the basis of our previous stand in *Hymer* just as this court disposed of the similar challenge to the *Hymer* rationale in Moor v. Madigan. *See* 458 F.2d at 1221.

Appellants have also asked that this case be considered *en banc*, in the event that we should affirm the determination of the district court. We are not unaware of the widespread rejection of *Hymer* by other courts. In fact, support for this court's position seems to have eroded since our holding in Moor v. Madigan.[2] However, we are of the opinion that any reconsideration of *Hymer* should occur in the context of a case which affords a more inviting opportunity for abandonment or modification of that opinion than does the one before us.

Judge Peckham's thoughtful analysis in Rundle v. Madigan, 331 F.Supp. 492 (N.D.Cal.1971), demonstrates several reasons why a case like *Moor* or this one presents the weakest rationale for the expansion of *Gibbs* to cover pendent parties. *See id.* 331 F.Supp. at 494–95. In the first place, appellant here seeks to press her state claims against a party defendant who would not otherwise be in federal court. This situation presents a greater risk of serious inconvenience to the defendant than does allowing an additional plaintiff to pursue his state claims in federal court against a defendant already subject to that court's jurisdiction as to other claims arising out of the same facts.

Secondly, diversity cases have generally presented more attractive opportunities for the exercise of pendent jurisdiction over additional parties asserting state law claims than have analogous cases arising in the context of federal actions based on federal question jurisdiction. In part, this is due to the fact that since all the claims arising in the diversity context are based on state law, they are for that reason more easily tried together than cases where the two sets of claims are based on substantially different theories of law. Also, as Judge Peckham noted, in the diversity cases where joinder of "pendent parties" has been permitted, the courts have often been confronted with claims by members of a single family arising out of a single accident. "The litigation of these intimately related claims in a single forum makes good practical sense." 331 F.Supp. at 495.

We are also of the view that lower federal courts should be cautious in expanding *Gibbs* to the type of situation involved in this case. Pendent jurisdiction remains a judicially-created basis for federal court jurisdiction, albeit an eminently reasonable one in many cases. Since Congress specifically declined to render political subdivisions subject to suit under the Civil Rights Act of 1871, it is at least arguable that this legislation and Congress' failure to repeal it reflect a congressional disinclination to see local governmental units subjected to actions in federal courts arising out of alleged deprivations of the civil rights of their own citizens.[3]

Finally, pendent state law claims arising in the context of federal civil rights actions will almost inevitably involve the same sort of difficult and unsettled questions of state law, and result in the same concomitant potential for jury confusion,

---

2. Patrum v. City of Greensburg, 419 F.2d 1300 (6th Cir. 1969), was the only post-*Gibbs* appellate case from another circuit to which we were able to point in Moor v. Madigan, 458 F.2d at 1221, as supportive of *Hymer*. On reflection, however, this case cannot be said to stand for the proposition that, in all situations, the district court is without discretion to join pendent parties. The Sixth Circuit's rejection of the *Hymer* rationale is in any event made clear by that court's subsequent decision in F. C. Stiles Contracting Co. v. Home Insurance Co., 431 F.2d 917, 919–20 (6th Cir. 1970), cited in Moor v. County of Alameda, 411 U.S. at 713 n. 29, 93 S.Ct. 1785.

3. *Cf.* Brault v. Town of Milton (2d Cir. 1975), slip op. at 1876 (Timbers, J., dissenting).

Of course, a county is still subject to a federal court action based on state law claims brought against it by a citizen of another state meeting the jurisdictional amount requirement. *See* Moor v. County of Alameda, 411 U.S. at 717–22, 93 S.Ct. 1785.

which the district court found likely in Rundle v. Madigan, *supra.*[4] This prospect, we think, would usually prompt the district judge to refuse to exercise jurisdiction over the pendent claims against a city or county, even though he had the discretionary power to accept it.[5] Hence, to say that there was power to adjudicate the state law claims would, in most cases such as this one, involve giving with one hand what will be taken away by the other.

The judgment of the district court is affirmed and the district court is directed to proceed with appellant's actions against the remaining defendants.

**4.** In Rundle v. Madigan, the district court found that adjudicating the state law claims would require it "to resolve difficult questions of [state] law upon which state court decisions are not legion." 331 F.Supp. at 495 n. 5. The court also took particular note of the complex nature of the defenses and justifications Alameda County might be able to raise. *Id.*

In the case before us, the district court did not consider whether similar defenses would have been available to the county in an action under Wash.Rev.Code § 4.08.120. However, appellee has suggested several difficult issues relating to its susceptibility to vicarious liability under that section in cases of this sort. It would thus appear that the potential for jury confusion would also have been substantial in this case. The jury would have had to keep in mind the distinct state law standards applicable to each class of defendants, as well as the relevant criteria for assessing the possible § 1983 liability of the non-county defendants.

**5.** Courts which have had occasion to make such discretionary rulings on the appropriateness of joining pendent municipal or county defendants in federal civil rights actions against local officials have regularly opted to dismiss the pendent claims. *See, e. g.,* Patrum v. City of Greensburg, 419 F.2d 1300, 1302 (6th Cir. 1969); *Cf.* Moor v. County of Alameda, 411 U.S. at 715–17, 93 S.Ct. 1785; Moor v. Madigan, 458 F.2d at 1221. Even if we were to accept appellant's suggestion and remand this case, there is no reason to expect that the district judge would not act similarly and exercise his discretion against hearing the pendent claims against Spokane County.